**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JESSICA COOK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOUTH CENTRAL ALABAMA ) <br> MENTAL HEALTH BOARD, INC., d/b/a ) <br> SOUTH CENTRAL ALABAMA ) <br> MENTAL HEALTH CENTER, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION NO.: <br> 26-138 <br><br> JURY DEMAND |

**COMPLAINT**

**I.   INTRODUCTION**

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights and violations of the Americans with Disabilities Act, Title 42 U.S.C. § 12101 *et seq.*, (hereinafter "ADA"), and unlawful retaliatory acts related thereto. The Plaintiff seeks compensatory, punitive, and nominal damages and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.   JURISDICTION AND VENUE**

2. Plaintiff believes that this Court has jurisdiction in accordance with 28 U.S.C. §1331, 29 U.S.C. §2617, 28 U.S.C. § 2201 and 2202, 29 U.S.C. § 794a, and 42 U.S.C. §12133.

3. The unlawful employment practices as alleged hereinbelow were committed by the Defendant within Covington County, Alabama.   Venue is proper pursuant to 28 U.S.C. § 1391and 42 U.S.C. § 2000e-5(g).

4. Plaintiff has fulfilled all conditions precedent to the institution of this action

including those statutory requirements under the ADA. On October 6, 2025, the Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) [Charge No. 420-2026-00038], within 180 days of the occurrence of the last discriminatory/retaliatory act.

5. Plaintiff has received a Notice of Right to Sue issued by the EEOC on December 10, 2025, and Plaintiff timely files this Complaint within ninety (90) days of the receipt of same.

### III.   PARTIES

6. Plaintiff, Jessica Cook (hereinafter "Plaintiff" or "Ms. Cook"), is a female citizen of the United States and a resident of Butler County in the State of Alabama and was a former employee of the Defendant's Andalusia, Alabama, location.

7. Plaintiff is a qualified individual under the Americans with Disabilities Act in that she suffers from a medical condition which substantially limits one or more of her major life activities, and/or is perceived as having a disability which substantially limits her major life activities, and/or has a history of having such disabilities. 42 U.S.C. § 12102, 42 U.S.C. § 12131, 29 U.S.C. § 706.

8. Defendant, South Central Alabama Mental Health Board, Inc., d/b/a South Central Alabama Mental Health Center (hereinafter "SCAMHC" or "Defendant"), is an Alabama non-profit organization doing business in Covington County, Alabama, and at all times relevant to this action it employed at least fifteen (15) or more employees.

9. The Defendant is an employer pursuant to 42 U.S.C. § 12111(5); and employers within the meaning of 42 U.S.C. § 2000e(a) and (b).

**IV.     FACTUAL ALLEGATIONS**

10.     Plaintiff began working for Defendant out of its Andalusia, Alabama, location on or about January 6, 2025, as a Crisis Response Network Director.

11.     Plaintiff's immediate supervisor was Megan Pina, Project Director.

12.     During the Plaintiff's employment she suffered from a disability, perceived disability, and/or had a history of a disability as she suffered from the medical conditions of ADHD, Bipolar Disorder, and a related sleep disorder.

13.     Plaintiff has received ongoing medical treatment for these conditions and at times when they flare up her abilities to perform daily life activities are limited.

14.     Despite Plaintiff's disabilities, with or without reasonable accommodation, she was able to perform her job with the Defendant, and she did so up and until her unlawful termination on May 27, 2025.

15.     From the start of Plaintiff's employment, the ability to work from home/remote work was allowed and she spent the majority of the first couple months of her employment working remotely.

16.     Plaintiff's supervisor, Megan Pina, also initially approved for Plaintiff to work remotely on days when Plaintiff had all-day virtual online training and Pina also allowed Plaintiff to make up any work from home, if necessary.

17.     During the period of February/April 2025, Plaintiff began to perform more work in-office and the dynamics of the office began to exacerbate her disabilities, making it hard for Plaintiff to concentrate on her work.

18. This was largely due to the office atmosphere being very loud and distracting with constant loud discussions which echoed into Plaintiff's office space.

19. Plaintiff was also placed in a very small office space (Plaintiff could touch the walls merely by extending her arms outwards) with no natural light/windows. And the office rarely used air conditioning and when they did it was set at 78 degrees, resulting in stuffy and uncomfortable surroundings.

20. Plaintiff mentioned these issues to Pina several times in or about February-April 2025 and how they impacted Plaintiff's ability to concentrate. No interactive or reactive steps were taken by Pina.

21. On or about April 22, 2025, Plaintiff met with Pina and specifically informed her that the Plaintiff had a medical condition covered by the ADA and asked for reasonable accommodations because it was hard for Plaintiff to concentrate in the noisy office atmosphere and that the lack of a window/natural light and air circulation made it harder for Plaintiff to regulate her conditions. At this time, Plaintiff also told Pina that more structure and clarity in instructions would assist her in her work performance.

22. Pina informed Plaintiff that she would follow up on the request for ADA accommodations with Sabrina Boddy, Human Resources Director.

23. Approximately ten minutes later, Pina informed the Plaintiff that Boddy's response to her request for ADA accommodations was that the Plaintiff could submit documentation if she liked, but that Plaintiff had agreed to work in Andalusia so that is where she would work and that they don't "do that" for employees.

24. Megan Pina told Plaintiff that she could follow up with Boddy herself if she wanted to continue to pursue the request.

25. The following day, April 23, 2025, Plaintiff emailed Sabrina Boddy (and copied Megan Pina) making a detailed formal request for reasonable ADA accommodations and provided a list of potential accommodations including the ability to work from home (telework), a hybrid work arrangement, and a workspace with access to natural light and/or windows. Plaintiff also provided medical information about her disability, how the office environment affected her disability, how each of the requested accommodations would successfully address her disabilities, and volunteered to provide more information from her medical provider.

26. Plaintiff made clear that she was willing to work with the Defendant to find a setup that supported both her ADA needs and the needs of the office team.

27. Shortly thereafter, Pina mentioned to Plaintiff in passing that she might be able to use a new office with a window and that she might be able to work remotely two days per week. Plaintiff replied that the office was loud more than only two days per week and asked if it was possible to have more remote days available. They discussed which days were loudest (due to meetings and number of staff in office) and Pina said she would let Boddy (Human Resources) know about the possibilities of a new office with a window and about letting Plaintiff work remotely on Wednesdays and Thursdays. Plaintiff again asked if it were possible to have more remote days per week. Pina said they would see.

28. Plaintiff was not told that any of her accommodations had been approved at this time. Her understanding was that she would have to wait to hear from Boddy for approval after Pina had spoken with Boddy.

29. Shortly after Plaintiff made her requests to Pina and Boddy for reasonable ADA accommodations, she began being subjected to a retaliatory hostile work environment by her direct supervisor Pina which culminated in unwarranted disciplinary action and her termination.

30. The retaliatory hostile environment which began after Plaintiff had requested ADA accommodations included, but was not limited to, the following:

(a) On or about May 8, 2025, Plaintiff received an unwarranted written reprimand from Pina after she refused to communicate with Plaintiff to clarify a work question in an attempt to resolve conflicting information provided to Plaintiff; and Pina reprimanded Plaintiff for remote work request.
(b) Pina stopped communicating with Plaintiff, was unresponsive and dismissive, became cold towards Plaintiff, and avoided direct engagement with Plaintiff. Her shunning of Plaintiff reached a point where instead of communicating with the Plaintiff directly on basic matters she would send messages or questions via the Plaintiff's co-workers.
(c) If the Plaintiff asked Pina for simple clarification on unclear directives she would refuse to respond to and/or ignore Plaintiff.
(d) Pina denied recognition for Plaintiff's completed work in contrast to accolades given to others on the team.
(e) Pina failed to advise the Plaintiff that her ADA accommodation request had been officially approved for remote work and continued to deny Plaintiff requests for remote work for virtual training days which she had previously been granted before she had officially asked for ADA accommodations.
(f) Pina required that Plaintiff submit all ADA remote workdays to her for approval in direct contravention to Human Resources' directives (as Plaintiff later discovered from Human Resources that Pina did not have the authority to do so).
(g) Plaintiff was excluded from meetings which were directly relevant to her responsibilities/duties and/or which would have allowed for growth in her role.
(h) Pina excluded Plaintiff from collaborative processes on matters directly related to Plaintiff roles and duties (technology updates, etc.).
(i) Plaintiff was subjected to stricter monitoring and scrutiny than she had been prior to her ADA accommodation requests and in comparison to her similarly situated co-workers.
(j) Plaintiff was subjected to disparate discipline by Pina while others were not.
(k) Plaintiff was subjected to unwarranted discipline and termination.

31. On or about May 8, 2025, Megan Pina sent Plaintiff a lengthy and unclear directive about Plaintiff working with Eric King. Plaintiff requested to review the email with Pina for clarity

6

and Pina refused to discuss it with Plaintiff.

32. On May 8, 2025, Plaintiff had requested to work from home. Plaintiff also emailed Megan Pina on this date and asked for a call to clarify some questions she had about conflicting information they had been provided about the distribution of a tablet to a local police department. Megan Pina refused to call Plaintiff and address the conflicting information they had been provided by the police department.

33. Pina also reprimanded Plaintiff for allegedly failing to follow proper steps to work remotely, telling Plaintiff that all telework requests must receive [Pina's] supervisor approval beforehand.

34. Plaintiff later discovered that Pina had failed to inform the Plaintiff that her accommodation request to work remote days had already been officially approved by this time, and that the Plaintiff did not, in fact, have to submit these requests to Pina for approval.

35. The following day, May 9, 2025, Pina issued Plaintiff a written reprimand for allegedly questioning her authority. Plaintiff had not done so – she had simply informed Pina of some conflicting communications they had received and requested clarification about a matter.

36. That same day, as part of the employee response section of the May 9, 2025, written reprimand, Plaintiff submitted a complaint (along with a copy of her April 23, 2025, written request for ADA accommodations) stating that she had requested ADA accommodations over two weeks ago and was still waiting on an official response. Plaintiff further stated that this was what had resulted in the write-up.

37. On the afternoon of May 9, 2025, Plaintiff emailed Pina and asked to be allowed to work remotely on May 12-13, 2025, as both days were full-day virtual online training which

7

Plaintiff had routinely attended remotely since her hire.

38. Megan denied Plaintiff's request, stating only Wednesdays and Thursdays were available to Plaintiff for remote work.

39. Plaintiff was completely unaware of this, as to her knowledge her ADA accommodation requests were still "pending" and no one had told her any specific information on approved accommodation terms.

40. On or about May 12 or 13, 2025, Plaintiff met with Sabrina Boddy (HR) to discuss the May 9, 2025, written reprimand; Plaintiff's complaint made in response to the reprimand; and what Plaintiff understood to be her still pending ADA accommodation requests.

41. During this meeting Boddy and Plaintiff discussed how the office dynamics negatively impacted the Plaintiff's disabilities.

42. During this meeting Boddy told Plaintiff, for the first time, that her ADA accommodations had been officially finalized earlier; that Pina was aware of this; and that Pina should have already notified Plaintiff that her ADA accommodations were approved.

43. Plaintiff informed Boddy that the only thing Pina had told her at this point was that Pina would talk to Boddy about Plaintiff having a new office with a window and possibly working from home two days per week; and that Plaintiff had been waiting for Boddy to follow up with her about the ADA accommodation requests.

44. Boddy responded that she had no knowledge of any such plans regarding an office with a window and that Pina had been responsible for notifying Plaintiff of the finalized remote work accommodations.

45. Pina had not done so and had, instead, continued to deny Plaintiff remote work or

8

reprimand her for requesting it.

46. Boddy also informed Plaintiff that Pina did not have authority to approve the Plaintiff's remote work requests, despite the fact that Pina had continued to deny them following her ADA accommodation requests.

47. By the end of the week, Plaintiff was informed via an email from Human Resources (with copies to Pina and the CEO) that she was allowed to work from home two days per week and that she could work in the conference room (which has windows) or walk outside for exposure to sunlight.

48. Plaintiff responded via email and specifically asked Boddy whether she had to seek permission from Pina each time she used her remote work accommodation, to which the answer was, "no."

49. Plaintiff then began working from home two days per week and did so on or about May 14, 15, 21, and 22, 2025.

50. Plaintiff also began working in the conference room when she was in-office.

51. However, Pina then began conducting extra loud conversations directly outside the conference room door when Plaintiff was working in that space resulting in increased distraction.

52. After Plaintiff was made aware that her accommodation request was finalized in May 2025, Pina instructed Plaintiff to copy her on all email communications involving technical information about the MyCare tablets. (Plaintiff had served as the designated contact person for tablet-related support and she had received no performance counseling or been informed of any issues relating to this responsibility.)

53.     No such directive was given to Plaintiff's similarly situated co-workers and Pina did not subject them to such scrutiny related to their tasks and responsibilities.

54.     In mid-May 2025, Pina excluded Plaintiff from attending an Advisory Council meeting despite the fact that the Plaintiff had coordinated the Advisory Committee and the meeting contacts.

55.     On May 27, 2025, Pina terminated Plaintiff's employment for false and purely pretextual reasons.

56.     Plaintiff was terminated approximately one month after informing Pina of her status under the ADA and of Plaintiff's formal request to Human Resources for ADA accommodations; and approximately two weeks after being told that her accommodations had been approved.

57.     Plaintiff was terminated only a little over two weeks after she had complained of retaliation in relation to the unwarranted May 8, 2025, written reprimand issued to her by Pina; and had complained of Pina failing to inform Plaintiff of her approved accommodation requests and denying her remote work accommodation requests.

58.     Plaintiff was subjected to discrimination due to her disability, perceived disability, and/or history of a disability via being denied reasonable accommodations, being subjected to unwarranted discipline, being subjected to stricter scrutiny than similarly situated co-workers, and having her employment terminated.

59.     Plaintiff was subjected to an ongoing hostile work environment by her direct supervisor because of the Plaintiff's disability status.

60.     Plaintiff was unlawfully retaliated against because of her request for reasonable accommodations by being subjected to an ongoing hostile work environment, being subjected to

unwarranted disciplinary action, and by being terminated from her employment.

61. Plaintiff was unlawfully retaliated against because of her complaint in opposition to disability discrimination by being subjected to an ongoing hostile work environment, being subjected to unwarranted disciplinary action, and by being terminated from her employment.

62. Plaintiff was also unlawfully retaliated against because of her complaint in opposition to unlawful retaliatory discipline by her supervisor by being subjected to an ongoing hostile work environment, being subjected to unwarranted disciplinary action, and by being terminated from her employment.

63. This conduct by the Defendant was willful, malicious, and in wanton disregard of the Plaintiff's federally protected rights.

64. The Defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

65. As the result of the Defendant's conduct the Plaintiff was deprived of income and other employment benefits due to her. She also suffered embarrassment, humiliation, inconvenience, and mental distress.

66. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory, and punitive damages is her only means of securing adequate relief.

67. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V.  CAUSES OF ACTION

### COUNT I – DISCRIMINATION IN VIOLATION
### OF THE AMERICANS WITH DISABILITIES ACT

68. Plaintiff realleges and incorporates by reference paragraphs 10 through 57 above with the same force and effect as if fully set out in specific detail hereinbelow.

69. Plaintiff is a qualified individual under the ADA because of her known disability, and/or perceived disability, and/or history of a being a person with a disability.

70. The Plaintiff is a person with a disability, has a history of disability and/or is perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

71. Despite the Plaintiff's disability, with or without reasonable accommodations, the Plaintiff was qualified for and able to perform the essential functions of her job with the Defendant.

72. Plaintiff made known to her supervision and to Human Resources of her disability and of her need for reasonable accommodations due to her disability.

73. Plaintiff was subjected to unlawful discrimination by the Defendant based on her disability and/or perceived disability and/or history of a disability by (a) being denied reasonable accommodations, (b) being subjected to unwarranted discipline, (c) being subjected to stricter scrutiny than similarly situated co-workers, (d) being subjected to an ongoing hostile work environment by her supervisor, and (e) having her employment terminated.

74. At the time of this unlawful activity the Defendant perceived the Plaintiff as having a disability, and/or had knowledge that the Plaintiff suffered from an actual disability, and/or had a history of a disability.

75. Defendant, by its discriminatory treatment of the Plaintiff has intentionally, willfully, with deliberate indifference and without justification deprived Plaintiff of her federally protected rights, as described herein. This deprivation violates Plaintiff's rights under the Americans with Disabilities Act.

76. The Defendant's conduct as described above caused the plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation

77. The plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

## COUNT II –RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

78. Plaintiff realleges and incorporates by reference paragraphs 10 through 57 above with the same force and effect as if fully set out in specific detail hereinbelow.

79. Plaintiff is a qualified individual under the ADA because of her known disability, and/or perceived disability, and/or history of a being a person with a disability.

80. The Plaintiff is a person with a disability, has a history of disability and/or is perceived as disabled pursuant to 42 U.S.C. § 12102, and 29 U.S.C. § 706.

81. Despite the Plaintiff's disability, with or without reasonable accommodations, the Plaintiff was qualified for and able to perform the essential functions of her job with the Defendants.

82. Plaintiff made known to her supervision and to Human Resources of her disabilities and of her need for reasonable accommodations due to her disabilities.

13

83. Plaintiff was subjected to unlawful retaliation for requesting reasonable accommodations by (a) being subjected to an ongoing hostile work environment, (b) being subjected to unwarranted disciplinary action, and (c) by being terminated from her employment.

84. The Plaintiff, in good faith, took action opposing the Defendants' discriminatory practices in violation of the ADA by making complaints of disability discrimination to the Defendant's Human Resources Director.

85. Thereafter, Plaintiff was unlawfully retaliated against because of her complaint in opposition to disability discrimination by being subjected to an ongoing hostile work environment, being subjected to unwarranted disciplinary action, and by being terminated from her employment.

86. The Plaintiff, in good faith, took action opposing the Defendants' retaliatory practices in violation of the ADA by making complaints of retaliation related to a disciplinary action to the Defendant's Human Resources Director.Plaintiff made good faith complaints of acts of both disability discrimination and retaliation.

87. Thereafter, Plaintiff was also unlawfully retaliated against because of her complaint in opposition to unlawful retaliatory discipline by being subjected to an ongoing hostile work environment, being subjected to unwarranted disciplinary action, and by being terminated from her employment.

88. The Defendant intentionally, willfully and with reckless indifference retaliated against the plaintiff in the terms, conditions, and benefits of her employment as set out above because of her request for reasonable accommodations under the ADA.

89. The Defendant intentionally, willfully and with reckless indifference retaliated against the plaintiff in the terms, conditions, and benefits of her employment as set out

above because of her good faith opposition to disability discrimination.

90. The Defendant intentionally, willfully and with reckless indifference retaliated against the plaintiff in the terms, conditions, and benefits of her employment as set out above because of her good faith opposition to retaliatory discipline in violation of the ADA.

91. Defendant, by its retaliatory treatment of the Plaintiff, has intentionally, willfully, with deliberate indifference and without justification deprived Plaintiff of her federally protected rights, as described herein. This deprivation violates Plaintiff's rights under the Americans with Disabilities Act.

92. The Defendant's conduct as described above caused the Plaintiff emotional distress, mental anguish, loss of enjoyment of life, inconvenience, and humiliation.

93. The Plaintiff seeks to redress the wrongs alleged herein in this suit for lost wages, lost benefits, an injunction and a declaratory judgment. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendants' unlawful policies and practices as set forth herein unless enjoined by this Court.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant is violative of the rights of the Plaintiff, as secured by the Americans with Disabilities Act;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the

Defendant's request from continuing to violate the Americans with Disabilities Act;

3. Grant the Plaintiff an order requiring the Defendant to make her whole by awarding her reinstatement into the position(s) she would have occupied in the absence of the unlawful acts by the Defendant with the same seniority, leave and other benefits of the position (or front pay), and back pay (with interest);

4. Grant plaintiff a declaratory judgment against the Defendant finding that her termination violated the ADA;

5. Grant Plaintiff applicable compensatory damages (ADA), punitive damages (ADA), and/or nominal damages, plus interest;

6. Grant Plaintiff her attorney's fees and costs; and

7. Grant Plaintiff such other relief as justice requires.

                Respectfully submitted,

                s/ Temple D. Trueblood
                Temple D. Trueblood (TRUET0355)
                Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Ttrueblood@wigginschilds.com


**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

                s/ Temple D. Trueblood
                OF COUNSEL

**Plaintiff requests this Honorable Court to serve via certified mail upon each of the named Defendant the following: Summons, Complaint.**

**<u>Defendant's Addresses:</u>**
South Central Alabama Mental Health Board, Inc.,
d/b/a South Central Alabama Mental Health Center
c/o Registered Agent
William Thomas Wright
820 South Three Notch Street; Suite B
Andalusia, AL 36420

                                              <u>s/ Temple D. Trueblood</u>
                                              OF COUNSEL